UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| KIMBERLIE MICHELLE DURHAM, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No.: 4:16-CV-01604-ACA ) |
| RURAL/METRO CORPORATION, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Kimberlie Durham ("Ms. Durham") sued her former employer, Defendant Rural/Metro Corporation ("Rural/Metro") for discrimination in violation of Title VII, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"). Ms. Durham's claim arises out of Rural/Metro's refusal to assign her a "light duty" or dispatch position after Ms. Durham's doctor imposed lifting restrictions during her pregnancy. Ms. Durham maintains that Rural/Metro intentionally refused to accommodate her lifting restrictions in the same way it accommodated other individuals with lifting restrictions because she was pregnant.

Before the court is Rural/Metro's motion for summary judgment. (Doc. 40). The parties have fully briefed the motion. (Docs. 41, 44, 45). For the reasons explained below, the court GRANTS the motion.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence in the light most favorable to the non-moving party. *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018). "The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## II. BACKGROUND

On March 2, 2015, Rural/Metro hired Kimberlie Durham to work as an Emergency Medical Technician ("EMT") at their Pell City, Alabama location. (Doc. 1 at 3; Doc. 42-3 at 17). Rural/Metro describes an EMT as someone who "[r]esponds to emergency and non-emergency requests, provides Basic Life Support (BLS) as needed[,] and transports sick or injured people . . . ." (Doc. 42-2 at 114). There is a physical component to the job as well, which requires that EMT's "frequently lift and/or move up to 20 pounds and occasionally lift and/or move, with help, up to 100 pounds." (Doc. 42-2 at 115). According to Ms. Durham the physical demands of the job as physically lifting stretchers, moving patients,

restocking supplies, and moving equipment between trucks "[p]retty much all day long." (Doc. 42-1 at 17).

Mike Crowell managed Rural/Metro's Pell City, Alabama location where Ms. Durham worked. (Doc. 42-3 at 11, 17). In September 2015, approximately five months after she was hired, Ms. Durham told Crowell that she was pregnant. (Doc. 42-1at 19; Doc. 42-3at 31). In the same conversation, Ms. Durham also disclosed to Crowell that her doctor had restricted her from lifting more than fifty pounds during her pregnancy. (Doc. 42-1 at 20; Doc. 42-3at 31). Crowell told Ms. Durham that she would not be able "work on the truck" with the lifting restriction. (Doc. 42-1 at 21). Durham agreed. (*See* Doc. 42-1 at 21; doc. 42-3 at 25).

As an alternative to working on the truck, Ms. Durham requested that Crowell "move [her] to either light duty or dispatch." (Doc. 42-1 at 21). Rural/Metro has a written "light duty" policy, formally known as the Transitional Work Program ("Light Duty Policy"). (Doc. 42-6). Rural/Metro created the Light Duty Policy "to temporarily modify an employee's existing position or work schedule, or provide transitional assignments to accommodate temporary restrictions identified by an employee's medical provider." (Doc. 41, ¶17 (citing doc. 42-6)). By its terms, the Light Duty Policy only applies to employees who suffer from a work-related injury or illness. (Doc. 42-6).

Consistent with the Light Duty Policy, Crowell informed Ms. Durham that Rural/Metro only provided "light duty" to employees who suffered on the job injuries and were on workers' compensation. (Doc. 42-1 at 22). Thereafter, Crowell contacted Human Resources about Durham's pregnancy and lifting restriction. (Doc. 42-3 at 32). Human Resources confirmed that Ms. Durham was ineligible for light duty because she was not "workers' comp" and, as such, did not qualify for the "Transitional Work Program." (Doc. 42-3 at 28-29, 37).

In response to Ms. Durham's request for a "move" to dispatch, Mr. Crowell informed Ms. Durham that he would have to "get back with [her]." (Doc. 42-1 at 21). Mr. Crowell then discussed with Human Resources whether there were any open, off-truck positions. (Doc. 42-3 at 33-34). Mr. Crowell testified that his office was fully staffed and to put Ms. Durham on dispatch would be "creating an extra person that I did not need." (Doc. 42-3 at 36-37). During her deposition, Ms. Durham also testified that she was not aware of any available light duty positions at the time she sought accommodation. (Doc. 42-1 at 60). But in a declaration submitted after her deposition, she recalled open dispatch positions "at the time she informed Rural/Metro of her lifting restriction." (Doc. 44 at 10 (*citing* doc. 44-2, ¶3)).

Because Ms. Durham was not eligible for FMLA leave due to her short tenure at Rural/Metro, the only available option was unpaid personal leave. (Doc.

4

42-1 at 23, 27). Rural/Metro's Unpaid Personal Leave Policy "allows employees to take unpaid personal leave for medical reasons, and is available to employees who have either exhausted their leave under the FMLA, or are not eligible for FMLA leave." (Doc. 41, ¶ 21). Leave is granted for up to ninety days, with the possibility of an extension of up to an additional ninety days. (*Id.*). Employees are prohibited from taking unpaid personal leave "for the purpose pursuing another position, temporarily trying out new work, or venturing into business." (Doc. 43-8 at 3).

On October 6, 2015, Rural/Metro mailed Ms. Durham a letter advising that she could request a personal leave of absence. (Doc. 41, ¶ 25). The letter instructed Ms. Durham to complete the leave request and return it to Human Resources. (*Id.*). Ms. Durham reviewed the policy and understood its language to prohibit her from finding another job or filing for unemployment. (Doc. 44 at ¶ 18). Ms. Durham contacted Human Resources to ask if there were any other options outside of taking unpaid leave. (Doc. 42-1 at 27). She was advised that unpaid leave was her only option. (Doc. 42-1 at 27).

Ms. Durham decided not to sign the unpaid leave paperwork. (Doc. 1 at ¶ 38). She was not scheduled to work after September 28, 2015. (Doc. 44 at ¶13). On November 12, 2015, Ms. Durham filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging sex discrimination based on her pregnancy. (Doc. 43-13). Thereafter, she was issued a Notice of Right to Sue

and filed the instant action alleging pregnancy discrimination in violation of Title VII, as amended by the PDA. (Doc. 42-5).

### III. ANALYSIS

Ms. Durham's Complaint asserts a single cause of action against Rural/Metro for pregnancy discrimination under the Pregnancy Discrimination Act ("PDA"). (Doc. 1 at 8). She claims that she was denied the opportunity to continue to work at Rural/Metro while she was pregnant because Rural/Metro only allowed those afflicted with on the job injuries to perform light duty tasks. According to Ms. Durham, Rural/Metro's Light Duty Policy treats pregnant workers less favorably than it treats nonpregnant workers similar in their ability or inability to work. The court evaluates Ms. Durham's claim in the light most favorable to her.

A plaintiff asserting disparate treatment claim under the PDA has the same burden of proof as one stating a disparate treatment claim based on sex under Title VII. She must prove that the defendant had discriminatory intent through direct or circumstantial evidence. *Denny v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001). In the absence of direct evidence, "an individual pregnant worker who seeks to show disparate treatment through indirect evidence may do so through application of the *McDonnell Douglas* framework." *Young v. United Parcel Service, Inc.* 135 S. Ct. 1338, 1353 (2015). Under that framework, a plaintiff must establish a prima facie case of discrimination by "showing actions taken by the

employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion," in this case pregnancy. *Young,* 135 S. Ct. at 1353 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978).

Here, Durham attempts to prove her pregnancy discrimination claim with circumstantial, rather than direct, evidence of discriminatory intent. (*See generally* docs. 1, 44). Accordingly, she carries the initial burden to establish: "(1) she was a member of a protected class, (2) she was qualified to do the job, (3) she was subjected to an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently." *Young,* 135 S. Ct. at 1345 (internal citations omitted). It is undisputed that Durham establishes the first two elements of her prima facie case – that is, as a pregnant woman, she was a member of a protected class and that she was qualified for her EMT job at Rural/Metro. (Doc. 42-3 at 18).

Whether Ms. Durham suffered an adverse employment action is disputed. Ms. Durham alleges Rural/Metro "subjected [her] to adverse actions by not allowing her to continue to work, denying her a modified/light duty assignment, denying her a transfer to dispatch, and terminating and/or constructively discharging her." (Doc. 1 at ¶ 8). Rural/Metro contends that the denial of a light duty assignment and the denial of a transfer to dispatch do not, by definition,

7

constitute an adverse employment action. (Doc. 41 at 15-16). Further, Rural/Metro asserts that Durham voluntarily abandoned her job and, consequently, there was no adverse employment action when the company "administratively" terminated her. (Doc. 41 at 16-19). Also, in dispute, are the terms of the unpaid leave policy and whether it actually precluded Durham from seeking other employment. (Doc. 41, ¶ 23; Doc. 44, ¶ 23). Given these disputes, the court cannot determine as a matter of law that Ms. Durham suffered an adverse employment action. *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999), *cert. denied,* 529 U.S. 1109 (2000).

But even if Ms. Durham sustained her burden of proving an adverse employment action, she must also provide substantial evidence that Rural/Metro intentionally treated Ms. Durham less favorably than other persons not so affected but similar in their ability or inability to work. *Young,* 135 S. Ct. at 1345. To make this proof, Ms. Durham points to three employees allowed light/modified duty assignments when they had lifting restrictions. (Doc. 42-3 at 29). Ms. Durham contends that "[t]hese men and Ms. Durham were comparable: they all had lifting restrictions that prohibited them from lifting the amount of weight required for an EMT." (Doc. 44 at 23). According to Ms. Durham, "[t]he only difference was that [her] restriction arose from pregnancy as opposed to an on-the-job injury." (*Id.*).

Rural/Metro argues these three employees are not valid comparators for Ms. Durham because she did not suffer an on the job injury. (Doc. 41, p. 20). No one disputes that Rural/Metro accommodates employees who had lifting restrictions imposed due to an on the job injury. (Doc. 41 at ¶¶ 11, 17; Doc. 44 at ¶ 7). These accommodations are made pursuant to the Light Duty Policy. (Doc. 41, ¶ 17). Rural/Metro contends that Ms. Durham must offer substantial evidence of employees placed on light duty assignment who were injured off the job in order to survive summary judgment. This court agrees.

The PDA does not require an employer to provide special accommodations to its pregnant employees; instead, the PDA only ensures that pregnant employees are given the same opportunities and benefits as *nonpregnant* employees who are similarly limited in their ability to work. *See Spivey v. Beverly Enters., Inc.,* 196 F.3d 1309, 1312 (11th Cir.1999) ("The PDA does not require that employers give preferential treatment to pregnant employees."), abrogated, in part, on other grounds by *Young,* 135 S. Ct. 1338 (2015). If an employee's pregnancy prevents her from fulfilling the duties of her position, her employer is not obligated to treat her any differently than it would treat a nonpregnant employee who is in the same position. *See Armindo v. Padlocker, Inc.,* 209 F.3d 1319, 1320 (11th Cir.2000) ("[T]he Pregnancy Discrimination Act ... is not violated by an employer who fires an employee for excessive absences, unless the employer overlooks the

comparable absences of non-pregnant employees."); *see also Geier v. Medtronic, Inc.,* 99 F.3d 238, 242 (7th Cir.1996) ("[T]he Pregnancy Discrimination Act does not require that employers make accommodations for their pregnant workers; 'employers can treat pregnant women as badly as they treat similarly affected but nonpregnant employees.'" (quoting *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 738 (7th Cir.1994) (alterations omitted)).

Unlike the plaintiff in *Young*, Ms. Durham does not tender *any* evidence of non-pregnant employees with lifting restrictions assigned to light duty when they were injured outside of work or otherwise unable to perform their job functions. The Rural/Metro policy accommodates one discrete group of employees, not several different types of disabilities where "many" found accommodation by UPS. (Doc. 42-3 at 28-29); *see also Young* at 135 S. Ct. at 1344 (noting that UPS' policy "accommodates many, but not all workers with nonpregnancy-related disabilities"). And, in *Young* there was evidence that "[s]everal employees received accommodations following injury, where the record is unclear as to whether the injury was incurred on or off the job" and other evidence that "[s]ome employees were accommodated despite the fact their disabilities had been incurred off the job." *Id.* at 1347. In the absence of similar evidence, Ms. Durham cannot establish a genuine dispute as to whether Rural/Metro provided more favorable treatment to at least some employees whose situation cannot reasonably be

10

distinguished from hers. *See Young*, 135 S. Ct. at 1355. To hold otherwise, would afford Durham "an unconditional most-favored-nation status" and run afoul of congressional intent as discerned in *Young*. *Young,* 135 S. Ct. at 1350.

## IV. CONCLUSION

For the reasons stated above, the court finds that there is no genuine issue of material fact and Rural/Metro is entitled to judgment as a matter of law. Accordingly, the court **GRANTS** Rural/Metro's motion for summary judgment. (Doc. 40). The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this October 9, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE