# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **KIMBERLIE MICHELLE DURHAM,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **Case No.: 4:16-CV-01604-ACA** |
| ) | |
| **RURAL/METRO CORPORATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Rural/Metro Corporation's ("Rural/Metro") motion for summary judgment. (Doc. 40). Plaintiff Kimberlie Durham contends that Rural/Metro violated Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. §§ 2000e-2(a)(1), 2000e(k), when it declined to offer her an accommodation for her pregnancy-related lifting restrictions in the form of either light duty or a dispatcher position. (Doc. 1).

PDA claims like this one, which depend on circumstantial evidence, are evaluated using a modified *McDonnell Douglas* framework. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015). Under that framework, the plaintiff must first present a prima facie case of discrimination. *Young*, 575 U.S. at 228. If she can do so, the employer must

give legitimate, nondiscriminatory reasons for denying the plaintiff's requested accommodation. *Id.* at 229. The plaintiff then must present evidence from which a jury could find that the legitimate, nondiscriminatory reason is pretext for discrimination. *Id.*

This court previously granted summary judgment to Rural/Metro, finding that Ms. Durham had not satisfied her burden of presenting a prima facie case of discrimination. (Docs. 55, 56). The Eleventh Circuit reversed, concluding that Ms. Durham had established a prima face case and that Rural/Metro had presented two legitimate, nondiscriminatory reasons for its denial of an accommodation: (1) that it offered light duty jobs only to workers injured on the job; and (2) that it had no dispatcher positions available at the time she requested an accommodation. *Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1286–87 (11th Cir. 2020). That Court remanded with instructions for this court to determine whether Ms. Durham carried her burden of presenting evidence of pretext. *Id.* at 1287. At the parties' request, the court permitted supplemental briefing on that issue. (Doc. 72).

The court now **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment. The court **GRANTS** the motion as to any claim that Rural/Metro discriminated against Ms. Durham by denying her a light duty position, and **WILL ENTER SUMMARY JUDGMENT** in favor of Rural/Metro and against Ms. Durham on that claim. However, the court **DENIES** the motion as to

2

the claim that Rural/Metro discriminated against Ms. Durham by denying her a dispatcher position, and will permit that claim to proceed.

**I.      BACKGROUND**

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted). The Eleventh Circuit's opinion set out the facts relevant to the motion for summary judgment in the light most favorable to Ms. Durham. *See Durham*, 955 F.3d at 1281–84. Under the law of the case doctrine, "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir. 1990). The law of the case doctrine does not apply where "substantially different evidence is produced" because "[w]hen the record changes . . . the evidence and the inferences that may be drawn from it change." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005). But here, the parties rely on the same evidence as before. Accordingly, this court is bound by the Eleventh Circuit's description of the facts.

The Eleventh Circuit set out the facts exhaustively, and this court will not repeat all of them. *See Durham*, 955 F.3d at 1281–84. In brief, Ms. Durham worked as an emergency medical technician ("EMT") for Rural/Metro. *Id.* at 1281. When

3

she learned that she was pregnant, her physician advised her not to lift more than 50 pounds. *Id.* at 1282. She informed a superior, Mike Crowell, about her lifting restriction, and they agreed that she could not continue to perform her regular work as an EMT while under that restriction. *Id.*

Rural/Metro had a Transitional Work Program for employees whose on-the-job injuries or illnesses imposed temporary work restrictions. *Durham*, 955 F.3d at 1282. That program offered "light duty" jobs, such as office work, to those employees, but not to any other employees with work restrictions. *Id.* Those other employees could, however, apply for other open positions that accommodated their work restrictions. *Id.* For example, Rural/Metro employed dispatchers who sent ambulances out on calls. *Id.* If a dispatcher position was open, an employee who was not eligible for light duty could apply to work as a dispatcher. *Id.* If no dispatcher position was available and the employee was not eligible for medical, annual, or sick leave, Rural/Metro offered an unpaid personal leave policy. *Id.* at 1282–83.

When Ms. Durham learned that she was pregnant and would not be able to perform her job as an EMT, she checked Rural/Metro's job board and saw several open dispatcher positions. *Durham*, 955 F.3d at 1282. She asked Mr. Crowell if she could work either light duty or dispatch. *Id.* After he consulted with Rural/Metro's Human Resources officer, Mr. Crowell informed Ms. Durham that she could not

4

work light duty because she had not suffered an on-the-job injury or illness, and that Rural/Metro had no dispatcher positions open. *Id.* at 1283. He told her that her only option was to take unpaid personal leave. *Id.* Rural/Metro's Human Resources Officer later confirmed Mr. Crowell's explanation. *Id.* Because Ms. Durham understood the personal leave policy to prohibit her from seeking another job while on leave, she did not apply for unpaid personal leave. *Id.* Given her work restrictions, Rural/Metro stopped scheduling Ms. Durham for shifts. *Id.*

After Ms. Durham filed a charge of discrimination with the Equal Employment Opportunity Commission, Rural/Metro's Human Resources Officer asked Mr. Crowell to verify that it had no open dispatcher positions available for Ms. Durham. *Durham*, 955 F.3d at 1284. Mr. Crowell responded "that he did not 'have any dispatch positions posted but if [he] needed to create a position for [Durham,] [he] could.'" *Id.* (alterations in original). But Rural/Metro did not offer Ms. Durham a dispatcher position, and never again scheduled Ms. Durham for a work shift. *Id.*

## II. DISCUSSION

Rural/Metro moves for summary judgment on Ms. Durham's claim that Rural/Metro violated Title VII, as amended by the PDA, when it failed to accommodate her pregnancy-related work restrictions by offering her either a light duty job or a dispatcher position. (Doc. 40). In deciding a motion for summary

judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Hamilton*, 680 F.3d at 1318.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). The PDA amended Title VII to provide that "'because of sex' . . . include[s] . . . because of or on the basis of pregnancy, childbirth, or related medical conditions." *Id.* § 2000e(k). "[W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work. . . ." *Id.*

As the court set out above, a claim of pregnancy discrimination based on circumstantial evidence is evaluated using a modified *McDonnell Douglas* test. *Durham*, 955 F.3d at 1285. The Eleventh Circuit has already held that Ms. Durham presented a prima facie case of pregnancy discrimination and that Rural/Metro presented two legitimate, non-discriminatory reasons for its failure to accommodate her: (1) light duty jobs are available only to those injured on the job, and (2) Rural/Metro had no dispatcher positions available when Ms. Durham sought an accommodation. *Id.* at 1286–87. The only question remaining for this court is

whether Ms. Durham has presented evidence that those reasons are pretext for discrimination. *Id.* at 1287.

Under *Young*, one way a plaintiff can carry her burden is by presenting "sufficient evidence that the employer's policies impose a significant burden on pregnant workers, and that the employer's legitimate, nondiscriminatory reasons are not sufficiently strong to justify the burden, but rather—when considered along with the burden imposed—give rise to an inference of intentional discrimination." *Young*, 135 S. Ct. at 1354 (quotation marks omitted). The plaintiff can show the existence of a significant burden "by providing evidence that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers." *Id.*

Rural/Metro contends, first, that Ms. Durham cannot establish that its refusal to provide a light-duty assignment is pretextual because it offered light duty assignments only to employees injured on the job, and excludes all other employees, including pregnant employees.[1] (Doc. 73 at 8–9). Ms. Durham does not dispute that Rural/Metro offered light duty positions only to employees who suffered on-the-job

---

[1] Rural/Metro also argues that it did not create light duty positions even for employees who were eligible for the Transitional Work Program, but instead offered those positions to eligible employees if the position already existed. (Doc. 73 at 9). Contrary to Rural/Metro's position, the Eleventh Circuit held that the evidence, interpreted under the summary judgment standard, shows that Rural/Metro's policy required it to "effectively create[ ] temporary positions that otherwise did not exist" for workers who were injured on the job. *Durham*, 955 F.3d at 1282. This court is bound by that holding. *See Heathcoat*, 905 F.2d at 370.

7

injuries.  (Doc. 74 at 9).  Instead, she argues that Rural/Metro's reliance on the Transitional Work Program is pretextual because Rural/Metro has not offered any evidence about why it offers light duty accommodations to employees injured on the job but not to pregnant employees.[2]  (*Id.* at 22, 25–27).

Ms. Durham mistakes where the burden lies at the pretext stage of the *McDonnell Douglas* test.  She contends that Rural/Metro must present evidence "justify[ing] why the policy excludes pregnant employees." (Doc. 74 at 25).  But at the pretext stage of the *McDonnell Douglas* test, the burden rests on the plaintiff to show why the exclusion of pregnant employees imposes a significant burden on them that outweighs the employer's legitimate, nondiscriminatory reasons.  *See Young*, 135 S. Ct. at 1354; *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (explaining that, at the pretext stage, "[t]he plaintiff retains the burden of persuasion.  She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision").

Ms. Durham has not presented any evidence at all on the pretext prong, instead arguing that "a jury could find that [Rural/Metro's] lack of explanation as to why it denies light-duty to pregnant employees while providing it to workers'

---

[2] Ms. Durham also challenges the sufficiency of the evidence supporting Rural/Metro's stated reasons for denying her the requested accommodations.  (Doc. 74 at 21–25).  But the Eleventh Circuit has already held that Rural/Metro satisfied its burden on that prong.  *Durham*, 955 F.3d at 1287.  This court cannot revisit that holding.  *See Heathcoat*, 905 F.2d at 370.

compensation employees evidences pretext." (Doc. 74 at 28). This is an attempt to shift the burden back to Rural/Metro at the pretext stage, which cannot succeed.

Ms. Durham also argues that she has presented evidence that Rural/Metro's Transitional Work Policy imposed a significant burden because she lost her income and the "opportunity to work at [the] time she needed her paycheck the most—when she was expecting her first child." (Doc. 74 at 26). The court cannot accept that argument. Certainly, a loss of income is a significant burden on any worker. But *Young* requires that the plaintiff establish that "the employer's policies impose a significant burden on *pregnant workers*." *Young*, 135 S. Ct. at 1354 (emphasis added) (quotation marks omitted). Ms. Durham has presented no evidence that the burden of losing income is particular to pregnant workers, nor that the burden outweighs Rural/Metro's reasons for offering light duty only to workers injured on the job.

The *Young* decision explains that a plaintiff can establish that an employer's policy puts a significant burden on pregnant workers "by providing evidence that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers." *Young*, 135 S. Ct. at 1354. In that case, the defendant "accommodate[d] most nonpregnant employees with lifting limitations while categorically failing to accommodate pregnant employees with lifting limitations." *Id.*; *see also Durham*, 955 F.3d at 1286 (explaining that the

defendant in *Young* accommodated workers were "injured on the job; employees disabled on the job (including those with resulting lifting limitations); those who had lost their Department of Transportation certifications because of a failed medical exam, a lost driver's license (including an employee who had lost his license for driving under the influence), or involvement in a motor-vehicle accident; and some employees who had been disabled off the job," among others). Ms. Durham has not presented any similar evidence with respect to Rural/Metro's Work Transition Program, which accommodates only workers injured on the job, and excludes all other workers, including pregnant workers.

Ms. Durham's argument is insufficient to carry her burden of presenting evidence by which a factfinder could find pretext, and with it, intentional discrimination based on pregnancy, with respect to the denial of a light duty assignment under Rural/Metro's Worker Transition Program. Accordingly, the court **GRANTS** the motion for summary judgment with respect to Ms. Durham's claim that Rural/Metro failed to accommodate her pregnancy by offering her a light duty job.

Rural/Metro's other legitimate, nondiscriminatory reason for failing to accommodate Ms. Durham is that it offers the accommodation of a dispatcher job only if an opening for such a job already existed, and that no such opening existed when Ms. Durham requested an accommodation. (Doc. 73 at 13–17). It contends

that Ms. Durham cannot show that this reason is pretextual because Ms. Durham presented only a "vague, belated, and inconsistent allegation" that a dispatcher position was available. (Doc. 73 at 13–16). Ms. Durham responds that she has created a dispute of material fact about whether dispatcher positions were open when she asked for an accommodation. (Doc. 74 at 28).

Here, the court agrees with Ms. Durham. As the Eleventh Circuit held, Ms. Durham's affidavit—in which she attested that she saw job postings for open dispatcher positions when she requested an accommodation—is sufficient to create a dispute of fact about whether any dispatcher positions existed at that time. *Durham*, 955 F.3d at 1282 & n.3. Rural/Metro's only argument in support of its second stated reason for failing to accommodate Ms. Durham is that its evidence that no dispatcher positions existed outweighs Ms. Durham's evidence that dispatcher positions did exist. (Doc. 73 at 13–17; Doc. 77 at 10). The court cannot make credibility determinations or weigh the evidence at the summary judgment stage. *See Hamilton*, 680 F.3d at 1318. A reasonable jury could find that there were open dispatcher positions when Ms. Durham requested an accommodation.

Rural/Metro makes no other arguments in support of summary judgment as to the part of Ms. Durham's claim relating to the denial of a dispatcher position as an accommodation for her pregnancy-related work restrictions. Accordingly, the court **DENIES** the motion for summary judgment with respect to that claim.

## IV. CONCLUSION

The court **GRANTS IN PART AND DENIES IN PART** Rural/Metro's motion for summary judgment. The court **GRANTS** the motion as to any claim that Rural/Metro discriminated against Ms. Durham by denying her a light duty position, and **WILL ENTER SUMMARY JUDGMENT** in favor of Rural/Metro and against Ms. Durham on that claim. However, the court **DENIES** the motion as to the claim that Rural/Metro discriminated against Ms. Durham by denying her a dispatcher position.

The court will enter a separate partial judgment consistent with this opinion.

**DONE** and **ORDERED** this November 30, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE